**HILL–ROM COMPANY, INC., Plaintiff–Appellant,**

v.

**KINETIC CONCEPTS, INC. and KCI Therapeutic Services, Inc., Defendants/Cross–Appellants.**

**Nos. 99–1314, 99–1315.**

United States Court of Appeals, Federal Circuit.

April 14, 2000.

Donald E. Knebel, Barnes & Thornburg, of Indianapolis, Indiana, argued for plaintiff-appellant.

R. Laurence Macon, Akin, Gump, Strauss, Hauer & Feld, L.L.P., of San Antonio, Texas, argued for defendants-cross appellants. With him on the brief were Rebecca Simmons, Kirt S. O'Neill, and Jo Beth Eubanks.

Before PLAGER, LOURIE, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

After a bench trial in the United States District Court for the District of South Carolina, the district judge ruled that certain hospital beds manufactured by defendants Kinetic Concepts, Inc., and KCI Therapeutic Services, Inc., (collectively, KCI) do not infringe various claims of United States Patent No. 5,586,346 (the '346 patent). We hold that the district court did not err in construing the asserted claims of the '346 patent and did not clearly err in finding that KCI's beds do not infringe those claims as construed. We therefore affirm the judgment for KCI. In light of our disposition of the main appeal, we dismiss KCI's conditional cross-appeal.

I

Plaintiff Hill–Rom Company, Inc., manufactures specialty hospital beds. It is the owner of the '346 patent, which is entitled "Method and Apparatus for Supporting and for Supplying Therapy to a Patient." The hospital bed described by the single embodiment of the '346 patent has two layers of inflatable cushions, one on top of the other, in place of a mattress. The upper layer is divided into controllable zones that can be independently inflated and deflated to provide optimal comfort to the patient. The cushions of the lower layer can be differentially inflated and deflated to distribute the amount of support pressure under different parts of the patient's body. The differential inflation of the lower layer of cushions can be used to rotate or turn the patient from side to side, which is recommended as therapy for patients with certain respiratory disorders. The beds can also provide therapies such as "percussion" and "vibration," which can aid in clearing congestion from patients' lungs.

Claims 1 and 10 of the '346 patent are the two claims at issue on appeal. The claims read as follows:

1. A patient support surface, comprising:

a support assembly;

a first longitudinal cushion set coupled to said support assembly, said first longitudinal cushion set including a plurality of generally parallel cells, and extending a portion of the longitudinal length of said support assembly;

a second longitudinal cushion set coupled to said support assembly, said second longitudinal cushion set including a plurality of generally parallel cells and also extending a second, longitudinally offset portion of the longitudinal length of said support assembly; and

an inflatable support layer disposed generally above said first and second longitudinal cushion sets.

10. A support surface for supporting a patient comprising:

a support assembly;

a first set of inflatable longitudinal cushions coupled to said support assembly and arranged to extend partially along the longitudinal length of said patient;

a second set of inflatable longitudinal cushions coupled to said support assembly and arranged to extend partially along another, longitudinally offset portion of the length of said patient;

a patient contacting assembly retained between said patient and said first and second sets of inflatable longitudinal cushions; and

a supply of air in selective communication with said patient contacting member and with said first and second sets of inflatable longitudinal cushions.

KCI also manufactures specialty hospital beds. The two KCI products at issue

in this case are the Triadyne bed and the modified Triadyne bed. In the original Triadyne bed, the surface on which the patient rests is made up of a multi-zoned upper layer of low-air-loss cushions that are about six inches thick. Below the upper layer are four inflatable longitudinal bladders. Two of the bladders are arranged side-by-side under the upper portion of the patient's body and the other two bladders are arranged side-by-side under the lower portion of the patient's body. The bladders are inflated only when they are used to rotate the patient by lifting and tilting the upper layer to one side or the other. When the bladders are not being used to rotate the patient, they remain deflated. The four bladders of the Triadyne bed cannot be inflated at the same time. The modified Triadyne bed is similar to the original bed, except that in the modified version the two lower body bladders are replaced with two sets of nine smaller transverse bladders, which overlap somewhat.

Hill–Rom filed suit against KCI alleging that the original and modified Triadyne beds infringe claims 1, 3–5, 9, 10, 21, 35, and 36 of the '346 patent. The trial court conducted a hearing to interpret the contested terms of the asserted claims. After construing the claims, the court entered summary judgment that KCI does not literally infringe claims 21, 35, and 36 of the '346 patent. The court, however, determined that there were genuine issues of material fact with respect to the remaining claims asserted by Hill–Rom.

During the ensuing bench trial, Hill–Rom contended that KCI's original and modified Triadyne beds infringe claims 1, 3–5, and 9 of the '346 patent, both literally and under the doctrine of equivalents. Hill–Rom also asserted that the original Triadyne bed infringes claim 10 literally and under the doctrine of equivalents and that the modified bed infringes claim 10 under the doctrine of equivalents. In its

defense, KCI pleaded noninfringement and patent invalidity.

Following trial, the district court ruled that neither of the Triadyne beds infringes the '346 patent and therefore granted judgment in favor of KCI. The court rejected KCI's affirmative defense of invalidity, finding that KCI had failed to show by clear and convincing evidence that the '346 patent is invalid. In its judgment, the court made no reference to the invalidity issue but simply stated that "judgment is hereby entered in favor of Defendants Kinetic Concepts Inc. and KCI Therapeutic Services Inc."

## II

On appeal, Hill–Rom asserts that KCI's original and modified Triadyne beds infringe claims 1 and 10 of the '346 patent. Hill–Rom's principal argument on appeal is that the district court erred in construing the term "cushion," which is used in both claims 1 and 10. The court's claim construction error, Hill–Rom argues, resulted in an erroneous ruling of noninfringement.

■ The district court interpreted the term "cushion" to mean "an inflatable enclosure or bag, which, when inflated, should provide basic support and comfort, but which does not necessarily have to be inflated at all times." Hill–Rom argues that the term "cushion" should have been interpreted more broadly, to mean "an enclosure or bag capable of being inflated." In Hill–Rom's view, nothing in the claims, specification, or prosecution history requires that cushions provide basic comfort and support.

We reject Hill–Rom's arguments and hold that the trial court correctly construed the term "cushion" to mean a structure that provides basic support and comfort. The trial court's interpretation of the term "cushion" is consistent with the ordi-

nary meaning of the word, which denotes an object providing some sort of support or comfort. *See Webster's Third New International Dictionary* 559 (1976 ed.) (defining "cushion" as "a bag or case made typically of cloth, upholstery or matting that is stuffed with a soft, resilient material and used for sitting, reclining, or kneeling: pillow, pad"). Because the court's construction is consistent with the ordinary meaning of the term, we agree with KCI that the trial court did not import extraneous functional limitations into the claim. *See York Prods., Inc. v. Central Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1572, 40 USPQ2d 1619, 1622 (Fed. Cir.1996).

The trial court's interpretation of the term "cushion" is also consistent with intrinsic evidence from the '346 patent itself. The abstract of the disclosure emphasizes the support and comfort provided by the upper and lower inflatable layers, which are identified in claims 1 and 10 as consisting of sets of cushions. The abstract states that "[t]he inflatable structure preferably has two components: a) lower inflatable layer which is selectively operable to provide basic support for the patient," and "a second inflatable layer includ[ing] a plurality of zones for establishing optimal patient interface pressures and patient comfort levels." * In addition, the written description portion of the patent recites that the "lower support layer" and the "upper overlay assembly" operate in conjunction to provide support and com-

fort to the patient, *see* '346 patent, col. 13, ll. 31–55. Moreover, the written description notes that the head section cushions of the lower layer "will lie under, and ... will support, the patient's head," *id.* at col. 9, ll. 41–48, and that "the lower inflatable layer has utility for supporting a patient directly, without the intervening upper support layer," *id.* at col. 18, ll. 4–7.

The specification thus clearly teaches that one of the major objectives of the cushions recited in the claims is to provide support for the patient, even though that function may be performed in part by the upper support assembly. Because the patent contemplates that the lower layer may be used to support the patient directly, without the upper support layer, the lower layer must have the capacity to provide that function by itself.

Hill–Rom argues that the written description portion of the patent associates the function of providing comfort solely with the upper inflatable support layer, which claim 1 describes as "disposed generally above" the two longitudinal cushion sets. The written description, however, describes the upper layer as providing "optimal patient comfort," *see id.* at col. 2, l. 59, from which it can fairly be inferred that the upper layer can be adjusted to optimize the patient's comfort, but that the upper layer does not perform the entire task of providing comfort for the patient.

That inference is supported by an examination of independent claim 10. Claim 10,

---

* Citing 37 C.F.R. § 1.72(b), which provides that the abstract of the patent "shall not be used for interpreting the scope of the claims," Hill–Rom argues that it would be improper for us to consider the abstract in determining whether the district court correctly construed the claims of the '346 patent. Section 1.72(b), however, is a rule of the Patent and Trademark Office that governs the conduct of patent examiners in examining patent applications; it does not address the process by which courts construe claims in infringement actions. We have frequently looked to the

abstract to determine the scope of the invention, *see, e.g., United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1560, 41 USPQ2d 1225, 1230 (Fed.Cir.1997); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1412, 40 USPQ2d 1065, 1066 (Fed.Cir. 1996); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1269, 229 USPQ 805, 810 (Fed.Cir.1986), and we are aware of no legal principle that would require us to disregard that potentially helpful source of intrinsic evidence as to the meaning of claims.

unlike claim 1, does not require an upper layer consisting of "an inflatable support layer disposed generally above said first and second cushion sets." Instead, claim 10 requires only a "patient contacting assembly" between the patient and the first and second sets of longitudinal cushions. Nothing in the patent suggests that the "patient contacting assembly" of claim 10 necessarily provides all the required comfort and support. For purposes of claim 10, then, the lower layer, *i.e.*, the layer consisting of sets of cushions, must be capable of providing whatever support and comfort is provided to the patient.

In arguing that the specification supports its broad construction of the term "cushion," Hill–Rom relies heavily on a sentence in the written description stating that the pressure in the working cushions of the invention will typically be equal within each cushion group "and will typically range between 0 and 20 inches of water." '346 patent, col 13, ll. 41–44. If the pressure inside the cushions can drop to zero, Hill–Rom argues, the cushions must not be required to provide comfort and support.

We do not attribute the same significance to that statement that Hill–Rom does. While the statement indicates that each cushion within the several sets of cushions in the lower layer of the patented support assembly has the capacity to operate at a pressure range from zero to 20, and thus particular cushions may not provide support and comfort at some point, such as during the patient rotation process, that does not cast doubt on the correctness of the district court's definition of the term "cushion" as a structure capable of providing comfort and support. The fact that at some point during the operation of the device a cushion may cease to have a "cushioning" effect does not make it any less a cushion, just as an automobile tire is no less a tire when it is deflated, even though it functions in its normal manner only when it is filled with air.

## III

Based on its claim construction, the trial court concluded that neither the original Triadyne bed nor the modified bed infringes the asserted claims of the '346 patent. Hill–Rom contends on appeal that the original Triadyne bed literally infringes claims 1 and 10, and that the modified Triadyne bed literally infringes claim 1 and infringes claim 10 under the doctrine of equivalents.

■ Hill–Rom's principal theory of infringement is answered by the district court's claim construction, which we adopt. The district court found that the bladders of the original and modified Triadyne beds "are not designed to, and do not function to, provide basic support and comfort to the patient, even when inflated." To the extent that Hill–Rom's theory of infringement relies on a broader definition of the term "cushion," we have already rejected Hill–Rom's proposed claim construction and we therefore reject Hill–Rom's principal argument on infringement.

Hill–Rom makes the alternative argument that, even accepting the trial court's claim construction, the Triadyne beds still infringe the '326 patent. Hill–Rom argues that merely because a patient is less comfortable on the Triadyne bed when the bladders are inflated and the patient is being rotated than when the bladders are deflated and the patient is static, the bladders can still be said to provide basic support and comfort. The trial court, however, found that the sole function of the bladders in the Triadyne beds is to rotate the patient; the bladders remain deflated until they are used for patient rotation, and they cannot all be inflated at the same time. The court therefore found that the Triadyne bladders do not provide basic comfort and support for the patient and for that reason are not "cushions" within the meaning of claims 1 and 10 of the '346 patent. We decline to upset as

clearly erroneous the court's finding of fact that the bladders of the two Triadyne beds do not provide the basic support and comfort necessary for those structures to be considered "cushions." We therefore uphold the district court's ruling on the issue of literal infringement.

■ With respect to Hill–Rom's claim that the modified Triadyne bed infringes claim 10 under the doctrine of equivalents, the trial court concluded that the lower body bladders of the modified Triadyne bed perform a different function, operate in a different way, and produce a different result from the invention claimed in the patent. The court therefore found that the modified Triadyne bed did not infringe claim 10 of the '346 patent under the doctrine of equivalents.

Hill–Rom contends that the district court's ruling was based on a misapprehension of the function of the "cushion" element. According to Hill–Rom, the only function of the cushions that is explicitly required by claim 10 is that they "retain air at specified pressures and [are] capable of maintaining a defined orientation." Hill–Rom asserts that in analyzing the doctrine of equivalents issue the trial court should have confined its inquiry to those explicitly defined functions, which are performed by the bladders of the modified Triadyne bed.

Hill–Rom's argument is without merit. The trial court correctly defined the term "cushion" as a device that performs the function of providing basic support and comfort. Thus, in determining whether a structural element of the accused device is equivalent to the "set of inflatable longitudinal cushions" recited in claim 10, the court properly considered whether that element performs substantially the same function of providing support and comfort as the cushions referred to in the claim. Because the term "cushion," as construed by the district court, carries with it certain functional features as a matter of the definition of the term, equivalence cannot be measured by reference only to the functions expressly set forth in claim 10, while ignoring the functional elements inherent in the term "cushion." The trial court therefore correctly framed the issue as whether the lower body bladders of the modified Triadyne bed perform the same function as the second set of inflatable longitudinal cushions referred to in claim 10. The court found that the bladders of the modified Triadyne bed, and the lower body bladders in particular, do not perform the function of providing support and comfort to the patient, a function that resides in the upper support layer of the Triadyne bed. By contrast, the court concluded that the longitudinal sets of cushions in the '346 patent must be able to provide basic support and comfort for the patient. The court's finding that the lower body bladders of the modified Triadyne bed do not perform substantially the same function as the longitudinal sets of cushions in the '346 patent was not clearly erroneous, and we therefore uphold it.

At one point in its brief, Hill–Rom suggests that its doctrine of equivalents argument extends to both the original and modified Triadyne beds and to both claims 1 and 10. Both claims 1 and 10, however, require a lower layer consisting of "cushions." The district court's conclusion that the bladders of the Triadyne beds are not equivalent to the cushions recited in the patent, because they do not provide basic support and comfort to the patient, is thus equally applicable to Hill–Rom's broader equivalence argument.

IV

KCI argues that if this court upholds the trial court's judgment of noninfringement, it should vacate the portion of the judgment relating to the validity of the '346 patent. In response, Hill–Rom

argues that this court has recognized that a district court may decide the issue of validity, even if invalidity was raised only as an affirmative defense and the patent was held not to be infringed. *See Multiform Desiccants, Inc. v. Medzam Ltd.,* 133 F.3d 1473, 1481, 45 USPQ2d 1429, 1436 (Fed.Cir.1998).

Hill–Rom is correct that *Multiform Desiccants* permits a district court to resolve the issue of invalidity, even if the issue was raised only as an affirmative defense and even if the court finds that the patent was not infringed. The court in *Multiform Desiccants* held that it was not required to address the issue of validity in that case, because the district court's judgment of noninfringement was affirmed. KCI argues that this case differs from *Multiform Desiccants* because in this case the district court reached the issue of patent validity and held the patent not invalid. For that reason, KCI urges us either to vacate the district court's ruling on the issue of validity or to address the validity issue on the merits.

Contrary to KCI's contention, there is no need for us to vacate the district court's validity ruling or address that ruling on the merits. The invalidity argument was raised only as an affirmative defense by KCI, not in the form of a counterclaim, and the district court therefore did not include in the judgment any reference to its ruling on the issue of invalidity. *Cf. Cardinal Chemical Co. v. Morton International, Inc.,* 508 U.S. 83, 93–94, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993) (distinguishing between a ruling on patent invalidity when raised as an affirmative defense and when raised as a counterclaim). Because the judgment contained no reference to the issue of the validity of the '346 patent, there is no need in this case, as there was in *Electrical Fittings Corp. v. Thomas & Betts Co.,* 307 U.S. 241, 242, 59 S.Ct. 860, 83 L.Ed. 1263 (1939), "to have this portion of the decree eliminated."

Moreover, the district court's resolution of the issue of invalidity was not necessary to the judgment. For that reason, the court's invalidity ruling will have no collateral estoppel effect in any possible future dispute between the parties involving the '346 patent. *See Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (for collateral estoppel to apply, first court's resolution of issue in question must have been "necessary to the outcome of the first action"); *In re Freeman,* 30 F.3d 1459, 1465–67, 31 USPQ2d 1444, 1448–49 (Fed.Cir. 1994) (same); *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.,* 723 F.2d 1566, 1571, 221 USPQ 394, 398 (Fed.Cir.1983) (same); *Restatement (Second) of Judgments* § 27 cmt. h, illus. 14 (1982) (in suit for trademark infringement, a finding that the trademark is valid but not infringed does not preclude the same defendant from asserting the defense of invalidity in subsequent litigation between the parties). Because the district court's ruling on the invalidity defense was not incorporated in the judgment and will have no binding effect on these or any other parties, there is no need for us to address the validity issue or, as KCI requests, vacate the judgment to the extent that it may be thought to incorporate a ruling on that issue.

V

In addition to requesting that the judgment be vacated with respect to the district court's finding that the '346 patent was not invalid, KCI filed a conditional cross-appeal in which it argued that the district court improperly excluded relevant prior art and erroneously failed to hold the '346 patent invalid in light of that prior art. Because we uphold the district court's judgment of noninfringement, we do not reach the issues raised by KCI in its conditional cross-appeal.

*AFFIRMED.*