HARPAK, INC., Plaintiff,

v.

CONVENIENCE FOOD SYSTEMS, INC., MA.CON Engineering SRL, Tiromat, S.p.A., and CFS Limited, Defendants.

No. Civ.A. 99–10070–WGY.

United States District Court, D. Massachusetts.

Aug. 4, 2000.

Michael L. Altman, Rubin & Rudman, Boston, MA, Eric S. Solowey, Rubin and Rudman, Boston, MA, James J. Foster, Robert E. Rigby, Jr, Wolf, Greenfield & Sacks, P.C., Boston, MA, for Harpak, Inc., plaintiff.

· Robert E. Hillman, Charles Hieken, Michael Zeliger, Fish & Richardson, Boston, MA, James D. Adducci, Adducci, Dorf, Lehner, Mitchell & Blankenship, P.C., Chicago, IL, James M. Hall, Fish & Richardson, Boston, MA, for Convenience Food Systems, Inc., Macon Engineering SRL, defendants.

Kenneth P. Neiman, U.S. District Court–Springfield, Office of the Clerk, Springfield, MA, for Kenneth P. Neiman, ADR Provider.

James M. Hall, Michael Zeliger, Fish & Richardson, Boston, MA, for Trimot S.P.A., CFS Limited, defendants.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

### I. INTRODUCTION

This is a patent infringement lawsuit on U.S. Patent No. 4,974,392 ("the '392 patent"), which describes an automated food-tray packaging machine. The plaintiff, Harpak, Inc. ("Harpak"), alleged that the defendants' Star 2S Lidding and Sealing Machine ("the Star 2S") literally infringes the '392 patent and, in the alternative, infringes pursuant to the doctrine of equivalents. The defendants, Convenience Food Systems, Inc., Ma.con Engineering SRL, Tiromat, S.p.A., and CFS Limited ("the Convenience defendants"), moved for summary judgment that the Star 2S does not infringe the '392 patent. The Court heard oral argument on the motion immediately following a *Markman* hearing on April 19, 2000, *see Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 376, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), and by Order of April 26, 2000, GRANTED the Convenience defendants' motion as to no literal infringement, and DENIED the motion as to infringement under the doctrine of equivalents. Upon further reflection, the Court now modifies the order to

GRANT the motion for summary judgment of non-infringement under the doctrine of equivalents. The reasons for the Court's decision are set forth below.

### II. BACKGROUND

#### A. *Summary of the Arguments*

The structure of the accused product, the Star 2S, is not in dispute. The parties' disagreement focuses on the construction of two terms in Claim 1 [1] of the '392 patent, pertaining to the part of the machine that moves unsealed containers from an inbound conveyor belt to a sealing area, and moves sealed containers from the sealing area to an outbound conveyor belt. Harpak argued that Claim 1 describes this mechanism (the "transfer mechanism") in relatively broad terms, such that the Star 2S falls within the literal scope of the claim language. The Convenience defendants argued that Claim 1 recites a particular transfer mechanism, one not employed by the Star 2S.

#### B. *The '392 Patent*

The '392 patent describes a machine that uses heat to apply a plastic covering to food trays that pass through the machine on conveyor belts. The dispute before the Court centered on the patent's description of the mechanism used to transfer the trays into and out of the heat-sealing unit. More specifically, the parties disagreed over the interpretation of two terms within Claim 1 of the patent, which states in pertinent part:

wherein said apparatus further comprises a pusher for moving a plurality of containers along said conveyor line from said first conveyor belt to said second conveyor belt, said pusher being supported by said framework and being arranged laterally to said conveyor line, a grip portion being defined by said push-

---

1. Harpak alleged infringement of Claims 1–6 and 10 of the '392 patent, but Claim 1 is the sole independent claim, upon which Claims 2–6 and 10 are dependent. As such, Claims 2–6 and 10 contain each limitation of Claim 1; therefore, any limitations discussed herein apply to all the disputed claims.

er, said grip portion being adapted to grip containers to be moved, . . .

wherein said pusher comprises an intermediate connecting portion and a coupling portion,

said apparatus further comprising an actuation shaft, a first end being defined by said actuation shaft, a second end being defined by said actuation shaft, said actuation shaft being *rotatably and slidably supported* on said framework, said actuation shaft being parallel to said conveyor line,

said *intermediate connecting portion* being connected at one end to said grip portion and being connected at another end to said coupling portion, said coupling portion being rigidly fixed to said first end of said actuation shaft.

Hall Aff., Ex. A, col. 5, line 19 to col. 6, line 3 (emphases and paragraphing added). The parties disagree as to the limitations of Claim 1 on (1) the manner in which the actuation shaft is supported on the apparatus' framework, and (2) the number of components that may comprise the intermediate connecting portion.

The patent includes an illustration of the transfer mechanism in which the actuation shaft rotates inward and outward to engage and disengage containers, and also slides laterally to move the containers through the heat-sealing unit. *See* Hall Aff., Ex. A, Fig. 5.[2] In the same illustration, the intermediate connecting portion consists of a single component attached at one end to a coupler fixed to the actuation shaft, and at the other end to the pusher and grippers. *See id.* Harpak argued that the illustration depicts the preferred embodiment of the transfer mechanism, and that the language of the claim requires neither a dual-functioning (rotating and sliding) actuation shaft nor a one-piece connecting portion. The Convenience defendants argued that the claim describes a particular transfer mechanism that re-

quires both the dual-functioning actuation shaft and the single-piece connecting portion—neither of which are part of the Star 2S.

### C. *The Star 2S*

The parties agreed that the accused product, the Star 2S, is like the apparatus described by the '392 patent in all respects except its transfer mechanism. First, instead of being driven by a dual-functioning actuation shaft that both rotates to engage and disengage containers and slides to move the containers through the heat-sealing area, the Star 2S transfer mechanism employs two shafts: shaft CL 4026 (the "primary shaft") which rotates but remains laterally stationary, and shaft CL 4027 (the "secondary shaft"), which is attached via a flange to the primary shaft, and swings on an axis defined by the primary shaft. *See* Hall. Aff., Ex. N. at T300. The Star 2S transfer mechanism moves containers through the heat-sealing area using grippers that are attached to blocks which themselves slide laterally along the primary shaft. *See id.* Second, the Star 2S transfer mechanism does not have a one-piece intermediate connecting portion joining shaft and pusher. Instead, it uses a series of components to transfer motion from the primary and secondary shafts to the grippers. *See id.* These components include: (1) a flange, which is attached at one end to the primary shaft and at the other to the secondary shaft; (2) a pinion gear, which is activated by the motion of the secondary shaft; and (3) a rack, which is engaged by the pinion gear and upon which are fixed the grippers. *See id.*

### III. DISCUSSION

### A. *Applicable Legal Standards*

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment

---

**2.** The illustration, along with an illustration of the accused transfer mechanism of the Star 2S, is attached to this memorandum as Ap-

pendix A. The Convenience defendants have also included an animated comparison of the two mechanisms in Hall Aff., Ex. O.

as matter of law. *See London v. Carson Pirie Scott & Co.,* 946 F.2d 1534, 1537–38 (Fed.Cir.1991). A "genuine" issue of fact is one that a reasonable jury, on the record before the court, could resolve in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When deciding a summary judgment motion, a court must view the evidence presented in the light most favorable to the non-moving party and resolve all doubts in its favor. *See Ethicon Endo–Surgery Inc. v. United States Surgical Corp.,* 149 F.3d 1309, 1315 (Fed.Cir.1998).

Patent infringement analysis is a two-step process that requires (1) construction of the asserted claim as matter of law, followed by (2) determination whether the accused product infringes the construed claim as matter of fact. *See, e.g., Athletic Alternatives, Inc. v. Prince Mfg., Inc.,* 73 F.3d 1573, 1578 (Fed.Cir.1996). The application of the doctrine of equivalents is normally a fact-finding task. *See Warner–Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 38, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). The Court may grant summary judgment of non-infringement under the doctrine of equivalents only "if no reasonable jury could determine that a claim limitation is met in the accused device by an equivalent." *Optical Disc Corp. v. Del Mar Avionics,* 208 F.3d 1324, 1329 (Fed.Cir.2000).

## B. *Claim Construction*

The Court construed the disputed terms of the '392 patent at a *Markman* hearing on April 19, 2000. The Court construed Claim 1 of the '392 patent to describe a transfer mechanism whose actuation shaft is supported in a manner that enables it to rotate and slide in relation to the framework of the tray-sealing machine. The Court further construed Claim 1 to describe an intermediate connecting portion made up of any number of parts which collectively perform the function of transmitting the movement of the actuation shaft to the grip portion of the tray-sealing machine. In so construing the terms of Claim 1, the Court considered the language of the claim itself and the prosecution history. The Court did not require the assistance of extrinsic evidence.

## C. *Literal Infringement*

Having pronounced as matter of law the meaning of the language of Claim 1 of the '392 patent, the Court then addressed the motion for summary judgment, comparing the properly construed claim to the accused product. *See Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1454–56 (Fed. Cir.1998) (en banc). It is "well settled that every claim limitation is material and essential, and that in order for a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device." *Perkin–Elmer Corp. v. Westinghouse Elec. Corp.,* 822 F.2d 1528, 1533 (Fed.Cir.1987) (quoting *Lemelson v. United States,* 752 F.2d 1538, 1551 [Fed.Cir.1985]). "If even one limitation is missing or not met as claimed, there is no literal infringement." *Mas–Hamilton Group v. LaGard, Inc.,* 156 F.3d 1206, 1211 (Fed.Cir.1998). Claim 1 of the '392 patent describes a transfer mechanism with an actuation shaft supported in a manner that enables it to rotate and slide in relation to the framework of the tray-sealing machine. The transfer mechanism of the Star 2S includes two shafts, neither of which are supported in a manner that enable them both to rotate and slide. Because the Star 2S does not have an actuation shaft supported in the manner described in Claim 1 of the '392 patent, there can be no literal infringement as matter of law. *See id.* Having established that there is no literal infringement, the Court need not consider whether the Star 2S has an intermediate connecting portion as described by Claim 1 of the '392 patent.

To focus the question of infringement by equivalence, however, the Court states for the record that the Star 2S does have an

intermediate connecting portion which performs the function of transmitting the movement of the actuation shaft to the grip portion of the tray-sealing machine. Therefore, the sole remaining question to be decided is whether the two shafts of the Star 2S transfer mechanism comprise the legal equivalent of the actuation shaft described by the '392 patent.

### D. *Doctrine of Equivalents*

 Equivalence is a factual matter normally reserved for a fact finder. *See Warner–Jenkinson*, 520 U.S. at 38, 117 S.Ct. 1040; *Sage Prods. v. Devon Indus.*, 126 F.3d 1420, 1424 (Fed.Cir.1997). Summary judgment of non-infringement under the doctrine of equivalents is, however, proper if no reasonable jury could determine that a claim limitation is met in the accused device by an equivalent. *See Warner–Jenkinson*, 520 U.S. at 39 n. 8, 117 S.Ct. 1040. "The determination of equivalence should be applied as an objective inquiry on an element-by-element basis." *Id.* at 40, 117 S.Ct. 1040. An element of the accused device infringes under the doctrine of equivalents if it performs the same function, in the same way, to produce the same result as the claim element. *See Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934–35 (Fed. Cir.1987) (en banc). There is only one claim element at issue here, the actuation shaft of the '392 patent. The question for the Court, then, is whether a reasonable jury could find that the two shafts of the Star 2S transfer mechanism perform substantially the same function, in the same way, to produce the same result as the actuation shaft recited in the '392 patent.[3]

The analysis begins by comparing the function of the actuation shaft of the '392 patent with the function of the primary and secondary shafts of the Star 2S transfer mechanism. The claim does not specify the function of the actuation shaft, but the absence of an explicitly defined func-

tion is not an impediment to the analysis. In *Hill–Rom Co. v. Kinetic Concepts, Inc.*, 209 F.3d 1337, 1341 (Fed.Cir.2000), the Federal Circuit affirmed summary judgment of non-infringement by equivalence where the trial court held that a cushion recited by a patent for an automatic bed performed the implicit function of providing support and comfort, and therefore was not infringed under the doctrine of equivalence by a cushion which did not perform this function. In so affirming, the *Hill–Rom* court acknowledged the necessity of making reasonable inferences where the claim does not explicitly recite the function of an element, concluding that "[b]ecause the term 'cushion,' as construed by the district court, carries with it certain functional features as a matter of the definition of the term, equivalence cannot be measured by reference only to the functions expressly set forth in claim 10, while ignoring the functional elements inherent in the term 'cushion.'" *Id.* at 1343.

In the case at bar, the parties disagree as to the function of the actuation shaft recited by the '392 patent. Harpak argues that the shaft's central function is to support the weight of the pusher. From this assertion grows the strangulated argument that, because the primary shaft of the Star 2S supports sliding blocks which perform the pushing action achieved by the sliding actuation shaft of the '392 patent, the primary shaft is the legal equivalent of the actuation shaft. But this wordplay is merely an attempt to divert the Court's attention from the true function of the actuation shaft. The Court's construction of the claim, as well as a reasoned inference from the terms therein, makes evident as matter of law that the actuation shaft of the '392 patent serves two important functions: (1) to drive the movement of the grippers in their engagement and disengagement of the food trays, and (2) to drive the movement of the pushers in moving the food trays longitudinally through

---

**3.** The Court rejects the Convenience defendants' argument that the doctrine of prosecu-

tion history estoppel bars Harpak from asserting an equivalence claim.

the heat-sealing unit. The shafts in the accused device function only to drive the gripping and releasing motion; the longitudinal motion is driven by a source independent of the rotating shaft. Granted, it is well established that "[a]n accused device may infringe under the doctrine of equivalents even though a combination of its components performs a function performed by a single element in the patented invention." *Dolly, Inc. v. Spalding & Evenflo Cos., Inc.*, 16 F.3d 394, 398 (Fed.Cir. 1994). "The doctrine of equivalents does not require a one-to-one correspondence between the accused device and that disclosed in the patent." *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed.Cir.1991). In the case at bar, however, it is the performance of two functions by one element which is itself a limitation of the claim; the dual functionality of the actuation shaft is what distinguishes it from the prior art.[4] A contrary conclusion would render the claim so broad as to encompass every tray-sealing machine which uses any number of driving mechanisms to accomplish a gripping and pushing motion.

Therefore, the proposition that multiple elements which perform the same function as a single component of the patented invention may comprise legal equivalence does not apply here. The dual-functioning actuation shaft is a claim limitation which

is not met by the accused device. Harpak has offered no evidence upon which a reasonable jury could deem insubstantial the functional difference between the shafts of the two devices. One actively pushes; the other passively supports an independent pushing device. Indeed, the name "actuation shaft" is indicative of the function of the patented element; to "actuate" means "to put into action or motion." *Webster's Third New International Dictionary* 22 (4th ed.1976). In the context of the transfer mechanism of the '392 patent, that motion is both lateral and longitudinal.

Having established that no reasonable jury could find that the elements in the two devices perform the same function, the Court need not complete the tripartite analysis by assessing whether the elements function in the same way and to produce the same result. *See Pennwalt*, 833 F.2d at 935. Non-infringement under the doctrine of equivalence is established as matter of law.

## IV. CONCLUSION

For the reasons discussed above, the Court by Order of April 26, 2000, GRANTED the Convenience defendants' motion as to no literal infringement, and now also GRANTS the motion as to no infringement under the doctrine of equivalents.

Judgment shall enter for the defendants.

4. The record includes patents whose transfer mechanisms, like that of the Star 2S, rely on independently driven gripping and pushing devices. *See* Hall Aff., Ex. E.

88

# APPENDIX A

1. <u>Transfer Mechanism of Harpak's Patented System</u>

**U.S. Patent** Dec. 4, 1990 Sheet 3 of 5 4,974,392

*Fig.5*

2. <u>Transfer Mechanism of the Convenience Defendants' Star 2S</u>

